461 So.2d 79 (1984)
Kenneth Wayne HARDWICK, Appellant,
v.
STATE of Florida, Appellee.
No. 63500.
Supreme Court of Florida.
November 21, 1984.
Rehearing Denied January 28, 1985.
Jerry Hill, Public Defender and Karla J. Staker, Asst. Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Jim Smith, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
This is an appeal from a conviction of first-degree murder and sentence of death. We have jurisdiction. Art. V, § 3(b)(1), *80 Fla. Const. We affirm the conviction and the sentence.
Hardwick, an itinerant housepainter, was charged with first-degree murder, sexual battery, robbery and burglary in the death of a seventy-two-year-old widow in Sebring, Florida. At some time in the fall of 1980, Hardwick had painted the victim's bedroom, living room and dining room and during that period had been seen riding as a passenger with the victim in her car. The victim was discovered lying under the covers of her bed with a pillow over her face. She had been beaten about the face, raped and strangled. Her house bore signs of forced entry and her purse and its contents, several necklaces and her car were missing. The car was later found in Jacksonville, several blocks from the Greyhound Bus Terminal. Hardwick's fingerprint was found on a heater knob to the left of the steering wheel.
On the day of the murder, Hardwick was drinking with friends. When he had exhausted his funds and was unable to borrow more, he left the bar, saying he was going to find someone from whom he could borrow some money. He returned several hours later with a wad of bills. Witnesses testified he appeared nervous and shaken.
Hardwick's former girlfriend, at the time of trial an inmate at Indiana Women's Institution and involved with Hardwick in a custody dispute over their child, testified that Hardwick had called her after the murder and confessed and asked her to provide an alibi for him. She testified that Hardwick had told her that he and a friend named Mike had approached the victim about a loan. When she refused and threatened to call the police, Hardwick became angry, hit her, raped and strangled her. Afterwards, he and the friend decided to make it look like a robbery, so they damaged the house and stole the car, purse and jewelry. Hardwick left Florida by bus. Although she testified that Hardwick had told her this story in January, 1981, the girlfriend did not disclose these details until May, 1982.
Hardwick was convicted on all four counts. The jury recommended and the court imposed the death penalty.
Appellant's first point attacks the validity of the conviction based on erroneous use of statistics by the prosecutor in his closing arguments. Laboratory tests had shown that the victim and the defendant both had type A blood. The defendant was also a secretor  his blood type is ascertainable through analysis of his other bodily fluids  but the victim's secretor status was undetermined. Semen stains on the victim's sheets showed the type A secretor blood group. The prosecution presented evidence that forty percent of the population have type A blood and eighty percent of the population are secretors. Thus, the prosecution argued that only thirty-two percent of the population would have type A secretor blood type and only approximately half that percentage  the males  could have committed the crime.
Appellant, on the other hand, argues that the evidence is consistent with a non-secretor having committed the crime. If the victim were a secretor and the perpetrator were not, the victim's vaginal secretions would account for the blood group evidence. Thus, appellant reasons, fifty-two percent of the population would have blood types not inconsistent with the evidence and that the male half of that group, or twenty-six percent of the population at large, could have committed the crime.
Further, the prosecutor in closing argument suggested that the percentage of possible perpetrators would have to be factored by the percentage of the world population which was in Sebring, decreasing further the percentage of the population available for consideration as suspects. Were this the extent of the prosecutor's argument and evidence, appellant's concern that the misapplication of statistics could have improperly influenced the jury might have some merit. However, the capstone of the prosecution's argument and evidence was the discovery of appellant's palm print on the bottom sheet of the victim's bed. *81 Whatever statistical misdirection may have gone before, the prosecutor was on factually and statistically solid ground when he argued that only one man in the entire population could have left that evidence. We find no grounds to reverse the conviction on this point.
Appellant also contends that the evidence presented was legally insufficient to support conviction on the robbery count. We disagree. The issue was one of fact and the jury's decision was well within the range of reasonable inferences to be drawn from the facts presented. We have reviewed the entire record and find nothing to warrant reversing the conviction.
Appellant raises six objections to the sentencing proceeding. Only one point, that which addresses the propriety of the aggravating factors, merits discussion. In sentencing appellant to death, the trial court found no mitigating circumstances and four aggravating factors  the defendant had previously been convicted of a felony involving violence; the murder occurred during commission of a felony; the murder was committed for pecuniary gain; the murder was cold, calculated and premeditated.
We cannot agree that the facts support a finding that this murder was cold, calculated and premeditated. This aggravating factor requires a degree of premeditation exceeding that necessary to support a finding of premeditated first-degree murder. Smith v. State, 424 So.2d 726 (Fla. 1982), cert. denied, ___ U.S. ___, 103 S.Ct. 3129, 77 L.Ed.2d 1379 (1983); Jent v. State, 408 So.2d 1024 (Fla. 1981), cert. denied, 457 U.S. 1111, 102 S.Ct. 2916, 73 L.Ed.2d 1322 (1982). The only evidence presented or argued as to this factor was that Hardwick intended to rob the victim and that once he began to choke or smother her, it would have taken more than a minute for her to die. The premeditation of a felony cannot be transferred to a murder which occurs in the course of that felony for purposes of this aggravating factor. What is required is that the murderer fully contemplate effecting the victim's death. The fact that a robbery may have been planned is irrelevant to this issue. Gorham v. State, 454 So.2d 556 (Fla. 1984). Neither can the fact that it takes the victim a matter of minutes to die once the process begins support this finding. The aggravating factor emphasizes cold calculation before the murder itself. See Cannady v. State, 427 So.2d 723 (Fla. 1983) (fact that victim was shot five times does not support finding that murder exhibited heightened premeditation). On the facts presented here, we cannot say this factor was proved beyond a reasonable doubt.
The finding that appellant had previously been convicted of a felony involving violence was supported by the contemporaneous convictions for robbery and sexual battery. This Court has previously held that multiple convictions from the same trial may be considered in sentencing. King v. State, 390 So.2d 315 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981); Lucas v. State, 376 So.2d 1149 (1979). We note that we have never considered the exact situation which now confronts us  convictions for violent felonies committed against the murder victim in the course of action which led to the murder itself. In Elledge v. State, 346 So.2d 998 (Fla. 1977), we said that the purpose for considering previous violent felony convictions is to engage in character analysis to ascertain whether the defendant exhibits a propensity to commit violent crimes. Where the evidence supports a finding of premeditated murder or where the violent felony is not a necessarily included element of felony murder, we cannot say that the separate acts of violence on one victim are less revealing of the violent propensities of the perpetrator than contemporaneous acts of violence on separate victims. We find no error here.
Although we find one aggravating factor to have been improperly applied, three valid ones remain. In the absence of any mitigating circumstances, imposition of the death penalty is proper. We have also considered the issue of proportionality and *82 find the death penalty appropriate to the case before us. Accordingly, the conviction and sentence are affirmed.
It is so ordered.
BOYD, C.J., and ADKINS, ALDERMAN and SHAW, JJ., concur.
McDONALD, J., concurs in result only with an opinion, in which OVERTON and EHRLICH, JJ., concur.
McDONALD, Judge, concurring in result only.
I agree with majority's affirmance of the conviction and sentence in this case. I disagree with that portion of the opinion which finds that contemporaneous convictions for violent felonies committed against the murder victim during the course of action leading to the murder may be used to establish the aggravating circumstances of previous convictions of violent felonies. See § 921.141(5)(b), Fla. Stat. (1981). I would hold that those violent felonies committed upon the victim during or close to the time when the defendant commits the murder may not be used to establish this aggravating circumstance.
We have said that this aggravating circumstance may be found where the violent felony occurred subsequent to the murder but the convictions are returned jointly. King v. State, 390 So.2d 315, 320-21 (Fla. 1980), cert. denied, 450 U.S. 989, 101 S.Ct. 1529, 67 L.Ed.2d 825 (1981). However, as the majority opinion recognizes, this Court has never before permitted contemporaneous violent felonies committed upon the murder victim by the defendant to establish the aggravating circumstance of previous convictions for violent felonies. I do not believe that the legislature, in enacting subsection 921.141(5)(b), intended such contemporaneous behavior to be counted as a prior history of violence. In this case such conduct aggravated the offense under the provisions of subsection 921.141(5)(d). It should not be counted twice. Therefore, I concur only in the result reached by the majority.
OVERTON and EHRLICH, JJ., concur.